UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE M. FERGUSON,                                    Case No. 12-15080

          Plaintiff,                          Nancy G. Edmunds
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                                     United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 16, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G. Edmunds referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on January 26, 2010, alleging that she

became disabled beginning January 28, 2009. (Dkt. 8-2, Pg ID 41). The claim was initially disapproved by the Commissioner on September 15, 2010. (Dkt. 8-2, Pg ID 41). Plaintiff requested a hearing and on June 23, 2011, plaintiff appeared with a representative before Administrative Law Judge (ALJ) Martha M. Gasparovich, who considered the case de novo. In a decision dated August 11, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 41-47). Plaintiff requested a review of this decision. The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on October 7, 2012, denied plaintiff's request for review. (Dkt. 8-2, Pg ID 28-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Secs.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

sentence four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 51 years of age at the time of the most recent administrative

hearing on June 11, 2011.  Plaintiff has past relevant work as a graphic designer,

which is skilled and sedentary.  (Dkt. 8-2, Pg ID 46).  The ALJ applied the five-

step disability analysis to plaintiff's claim and found at step one that plaintiff had

not engaged in substantial gainful activity since the application date.  *Id*.  At step

two, the ALJ found that plaintiff's probable postural orthostatic tachycardia

syndrome and possible fibromyalgia were "severe" within the meaning of the

second sequential step.  (Dkt. 8-2, Pg ID 43).  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  *Id*.  The ALJ concluded that plaintiff has the following

residual functional capacity:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b),
> except as follows: the claimant can stand and walk for
> six hours in an eight hour work day and sit for six hours
> in an eight hour work day; she can occasionally lift 20
> pounds and frequently lift 10 pounds; she cannot push or
> pull with the upper extremities; and she cannot reach
> above chest level.

(Dkt. 8-2, Pg ID 43-44).  At step four, the ALJ found that plaintiff could perform

her past relevant work as a graphic designer, which is skilled and sedentary, and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (Dkt. 8-2, Pg ID 46). Because the ALJ concluded that plaintiff could perform her past relevant work at step four, she did not reach step five of the analysis.

   B.   Plaintiff's Claims of Error

   Plaintiff first argues that the ALJ erred by failing to properly evaluate plaintiff's severe impairments and pain.  The ALJ found that plaintiff suffers from "probable postural orthostatic tachycardia (POTS) and possible fibromyalgia." (Tr. 16).  According to plaintiff, the treating doctors' conclusions, after months of rigorous treatment, have not used the words "probable" or "possible."  The use of these words is a mischaracterization of the record by the ALJ.  Dr. Mary Kleaveland, after months of testing and evaluations, diagnosed "severe postural tachycardia and severe chronic fatigue."  (Tr. 498).  Plaintiff contends that her POTS diagnosis is not "probable" nor is the fibromyalgia a "probable."  On March 24, 2009, plaintiff underwent Holter monitoring which revealed premature atrial complexes (PACs) and chest pains throughout the testing.  (Tr. 262).  Thus, plaintiff contends that the ALJ is wrong is stating that "heart testing performed in the following months showed no abnormalities."  (Tr. 16).

   Plaintiff also argues that the ALJ weighed her mischaracterized evidence

heavily while ignoring other medical evidence that plaintiff is severely impaired. Plaintiff maintains that the ALJ does not give good reasons in her decision for weighing plaintiff's doctors' assessments differently, as is required by SSR 96-2p. Such error is not harmless where the basis for the ALJ's dismissal of a physician's opinion is unclear and that opinion was not inadequate as a matter of law. *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). The ALJ's use of the words "probable" and "possible" to qualify plaintiff's diagnosis shows an intent to mischaracterize the record. The ALJ is required to evaluate all the medical opinions and she should have accepted as controlling, or at least very weighty, the opinion of the long-term treating physician that there was a firm diagnosis of POTS.

Next, plaintiff argues that the ALJ made an improper credibility determination. Plaintiff contends that the ALJ's credibility finding is flawed to the extent it ignores SSR 96-7p and 20 C.F.R. § 404.1529. The ALJ found plaintiff not disabled and not credible but does not really state why plaintiff is not credible. (Tr. 17). The ALJ uses boilerplate language that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual function capacity." (Tr. 17). According to plaintiff, the "above residual function capacity," as referenced by the ALJ and summarized in the preceding paragraph, states that

plaintiff can sit for 15-20 minutes, lift five pounds and needs to lie down 50 to 60% of the day.  (Tr. 17).  Plaintiff argues that the ALJ's conclusion is contradictory on its face.[2]

As stated, the ALJ's credibility finding ignores SSR 96-7p and 20 C.F.R. § 404.1529 and erroneously dismisses plaintiff's credibility based on a boilerplate determination that was result oriented, stating that her testimony was only credible to the extent it was consistent with the ALJ's RFC finding. (Tr. 20); *see Jones v. Heckler*, 583 F.Supp. 1250, 1253 (N.D. Ill. 1984) (admonishing the Agency for rendering decisions that were result-oriented rather than justice-oriented); *McGee v. Astrue*, 770 F.Supp.2d 945, 947-49 (7th Cir. 2011) (rejecting boilerplate credibility determinations); *Parker et al. v. Astrue*, 597 F.3d 920, 921-24 (7th Cir. 2010) (criticizing the opinions of ALJs denying benefits that routinely stated that although "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the claimant's statements concerning the 'intensity, persistence and limiting effect of these symptoms are not entirely credible' to the extent they are inconsistent with the RFC.").  According to plaintiff, the use of boilerplate language also underlies the fact that the ALJ's credibility determination was not supported by substantial evidence.  *Valentin v.*

---

[2]  It is clear from the ALJ's decision that the RFC finding was as stated earlier in the Factual Background, not as plaintiff describes here.  Rather, plaintiff refers to the ALJ's summary of plaintiff's claimed abilities, not the ALJ's ultimate RFC finding.

*Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 22648, at *19-20 (W.D. Mich. 2010).

In this case, plaintiff asserts that the ALJ failed to set forth sufficiently specific reasons as to why she found plaintiff's testimony concerning her limitations on walking, standing and sitting as not credible.  "In determining the credibility of an individual's statements, it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible."  *Calhoun v. Comm'r of Soc. Sec.*, 338 F.Supp.2d 765 (E.D. Mich. 2004) (citing SSR 96-7p).  Plaintiff also points out that the ALJ's decision contains discussion of plaintiff's testimony regarding how she gets stabbing pain and numbness in her chest and arms and that she can sit for twenty minutes before she has to lie down to alleviate her pain.  (Tr. 32-33). Or the fact that she can only lift three to five pounds before her arms get weak and numb and that she described her day as "continually try to do one thing and then rest, try to go back and besides all that, you have fatigue that is on you. So it makes it even harder to continue on with it."  (Tr. 34).

Plaintiff also argues that the ALJ erred by failing to consider the effects of her impairments on her ability to work.  The ALJ violated SSR 96-8p in not considering the effect of plaintiff's impairments including her subjective complaints of pain and fatigue.  SSR 96-8 requires considering the impact of both severe and non-severe impairments on the ability to work.  In assessing plaintiff's

impairments and the effects thereof, the adjudicator must consider limitations and restrictions imposed by all of the individual's impairments, even those that are not "severe." The ALJ merely concluded that plaintiff can perform her past work as a graphic designer. (Tr. 19). Plaintiff argues that the ALJ erred in failing to fully consider all of her impairments. In determining the RFC, the ALJ must consider the combined effects of all impairments. Indeed, plaintiff testified that she stopped working in January 2009 because she could not sit at the computer without her arms going weak. (Tr. 32). Since her job as a graphic designer entailed repetitive movements using not only the computer keyboard but the computer tablet, plaintiff testified that she could not do it as she would get chest pains after a couple of movements. (Tr. 32). Plaintiff described how she got a stabbing pain and numbness in her chest and arms. *Id*. None of these important vocationally limiting factors were even minimally considered in evaluating whether plaintiff could perform her past relevant work. Plaintiff contends that the ALJ's hypothetical question is flawed because the hypothetical question assumed that plaintiff could work eight hours a day, five days a week, and that there is nothing in the hypothetical question to suggest impairments for severe postural tachycardia and severe chronic fatigue with possible fibromyalgia. (Tr. 498). Dr. Kleaveland notes that plaintiff's symptoms are chronic pain, numbness and weakness in her chest, neck, shoulders and face, which are made worse when in an

upright position and makes it so she cannot sit or stand for a period of fifteen minutes at a time without feeling bad and weak, and that the hypothetical question did not fairly summarize the voluminous medical evidence in this case.

Plaintiff also contends that the ALJ's RFC finding was incomplete because the ALJ erroneously ignored and failed to address the treating doctor's opinion. Dr. Kleaveland completed a PRFC in which she stated that plaintiff is unable to work due to her fatigue, weakness, numbness, and pain.  (Tr. 499).  Functionally, Dr. Kleaveland states plaintiff can lift up to ten pounds, stand and walk for a total of two hours out of an eight-hour day, while only twenty to thirty minutes at a time, sit for a total of four hours out an eight-hour day while only fifteen to twenty minutes at a time, would need a twenty to thirty minute unscheduled break every fifteen to twenty minutes and would miss more than four days a month due to medical issues.  (Tr. 501-02).  The language of the ALJ's decision clearly omits any reference to the treating doctor's finding of plaintiff's inability to complete a normal workday and work week and, furthermore, plaintiff maintains that it is patently obvious from the ALJ's reasoning that she was not referencing such an inability because she notes that "[t]he undersigned may properly consider the objective medical evidence in testing credibility and finding the subjective complaints exaggerated" and that the evidence did not support an inability to perform all work activity.  At no point during the hearing did plaintiff state she

9

was unable to perform all work activity, but rather that she was unable to maintain a normal workday or workweek without interruptions. Instead, plaintiff contends that the language of the ALJ's reasoning indicates that her statements were directed at plaintiff's own testimony and, therefore, wholly ignored the treating doctor. Plaintiff points out that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 2003 U.S. App. LEXIS 1801 (6th Cir. 2003). The ALJ must state how she weighed the evidence of record to give plaintiff a full and fair review, but did not do so here. *Sims v. Apfel*, 530 U.S. 103 (2000). An ALJ cannot ignore an entire line of evidence and, in doing so, commits an error that warrants a remand. 20 C.F.R. § 404.1527; *see e.g. Laskowski v. Apfel*, 100 F.Supp.2d 474 (E.D. Mich. 2000) (finding that the ALJ erred in ignoring a physician's explanation and a plethora of medical evidence); *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986 (N.D. Ohio 2003) (finding that the ALJ erred in ignoring part of a physician's finding).

Furthermore, plaintiff contends that the treating doctor's findings that plaintiff was unable to complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number of rest periods are supported by the medical record. In addition to plaintiff's issues

with endurance, the mere frequency of her bad days show that she would have been unable to have a complete workweek free of any symptom-based interruptions.  Additionally, plaintiff's skilled work as a graphic designer requires a demanding level of concentration, persistence and pace.  Plaintiff argues that even a minimal consideration of her pain and fatigue would impede on her ability to perform skilled work.

Even assuming plaintiff's impairments were not as severely limiting as plaintiff contends, according to plaintiff, a remand is necessary for consideration of the combination of severe and non-severe impairments, and their effect in combination which includes plaintiff's POTS and fibromyalgia diagnosis and their effects on her ability to work.  *See White v. Comm'r of Soc. Sec.*, 312 Fed.Appx. 779, 787 (6th Cir. 2009) ("[O]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe.").

Lastly, plaintiff argues that, based on the ALJ's errors in her credibility, Step 2, Step 3, and Step 5 determinations, an outright reversal is warranted here. The Sixth Circuit has held that a remand for benefits is appropriate if the decision is clearly erroneous, the proof of disability overwhelming, or the proof of disability is strong and evidence to the contrary is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d, 171, 176 (6th Cir. 1994).  Here, the proof of

Report and Recommendation
Cross-Motions for Summary Judgment
*Ferguson v. Comm'r*; Case No. 12-15080

disability is overwhelming and contradictory evidence is absent.

C.    <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, at step two of the sequential evaluation process, the ALJ reasonably found that plaintiff had the following severe impairments: probable postural orthostatic tachycardia syndrome (POTS) and possible fibromyalgia.  (Tr. 16).  While plaintiff takes issue with the use of the words "probable" and "possible" to "qualify" her impairments, the record shows that plaintiff's treating physicians used these exact "qualifiers" to describe her diagnoses.  The Commissioner points out that plaintiff's physicians repeatedly described her impairments as "probable" and "possible."  In March 2009, Mary Kleaveland, M.D., wrote that she was "still considering that [Plaintiff] may have POTS syndrome."  (Tr. 302).  In June 2009, Dr. Kleaveland assessed "possible POTS syndrome" and stated that she could not explain all of plaintiff's symptoms with a diagnosis of POTS.  (Tr. 290).  In July and August of 2009, Dr. Kleaveland assessed "probable POTS syndrome."  (Tr. 275, 283, 363).  In October 2009, Dr. Kleaveland indicated that she wondered whether plaintiff had fibromyalgia, although the numbness she described did not fit with fibromyalgia symptoms.  (Tr. 339), and later wrote that plaintiff had "possible POTS versus possible fibromyalgia."  (Tr. 369, 434, 481, 512).  Dr. Kleaveland continued to refer to plaintiff's diagnoses as "probable" or "possible."  (Tr. 407, 409, 414, 483, 487,

490, 492, 533, 541, 543, 549, 551, 553, 562, 577).  In addition, Claire Duvernoy,

M.D., a colleague of Dr. Kleaveland, wrote that she could not explain plaintiff's

current symptomatology (Tr. 299, 353), and that plaintiff suffered from an ill-

defined pain/numbness syndrome.  (Tr. 331).  The record shows that plaintiff's

treating physicians could not explain her symptoms and used "probable" and

"possible" when attempting to diagnose her.  Thus, the Commissioner contends

that the ALJ cannot be faulted for using the same terms for plaintiff's impairments

as her treating physicians used to describe her impairments.  Accordingly, the

Commissioner asks the Court to reject plaintiff's argument.

The Commissioner also argues that the medical evidence serves as

substantial evidence supporting the ALJ's credibility finding.  Plaintiff had normal

chest diagnostic studies (Tr. 254, 438, 522, 536), and unremarkable thoracic spine

diagnostic studies.  (Tr. 439, 528).  A May 2009 cervical spine x-ray showed no

prevertebral soft tissue swelling, minimal 2-3 millimeters retrolistesis of C5 and

C6, loss of vertebral disc height at C5-C6 and C6-C7 with anterior osteophyte

formation, mild posterior facet osteoarthrosis, and mild narrowing of the bilateral

C5-C6 neural foramina.  (Tr. 249, 373).  Yet, plaintiff had good motion of her

cervical spine.  (Tr. 279).

Other than possible postural orthostatic tachycardia suggested by a tilt test

(Tr. 239), plaintiff's cardiac diagnostic testing revealed no other abnormal

findings and she had normal cardiac examination findings.  (Tr. 18, 238-39, 247, 252-59, 275, 283, 290, 299, 302-05, 309, 331, 338, 353, 356, 363, 365, 369, 434, 481, 485, 508, 553, 577).  A May 2009 electroneuromyography report revealed normal findings.  (Tr. 260-61, 376-77).  Plaintiff's physical examinations also showed she had normal muscle strength, normal reflexes, no extremity edema, and intact sensation.  (Tr. 238, 240, 247, 275, 279, 283, 290, 299, 302, 309, 331, 338, 353, 356, 363, 365, 369-70, 434-35, 481-82, 485, 508, 577).  In light of the objective medical evidence of record, it was reasonable for the ALJ to conclude that plaintiff's subjective complaints of disabling limitations were not entirely credible.

In addition, the Commissioner says that the state agency medical opinion supported the ALJ's credibility finding.  *See* 20 C.F.R. § 404.1529(c)(1) (stating that probative medical source opinions are considered in making credibility determinations).  Lina Caldwell, M.D., reported that plaintiff's symptoms were not supported by the medical evidence.  (Tr. 388).  Based on her review of the evidence of record, Dr. Caldwell opined that plaintiff could perform light work despite her impairments.  (Tr. 389-96).  The Commissioner maintains that the ALJ properly relied on the expert state agency opinion when evaluating plaintiff's credibility and formulating her residual functional capacity assessment.  (Tr. 18-19).

Report and Recommendation
Cross-Motions for Summary Judgment
*Ferguson v. Comm'r*; Case No. 12-15080

The Commissioner further points out that plaintiff's extensive range of daily activities, also noted in the ALJ's decision (Tr. 18), further support the ALJ's credibility determination and her residual functional capacity finding. *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 (both stating that the adjudicator may consider evidence of an individual's daily activities when assessing credibility).  Plaintiff reported on her disability function report that she fed her two cats (Tr. 169-70), prepared simple meals (Tr. 170-71), cleaned (Tr. 171), vacuumed (Tr. 171), drove (Tr. 172), shopped (Tr. 172), and attended church activities.  (Tr. 173).  Tellingly, the medical notes from Plaintiff's doctor reveal that she was even more active than she reported to the agency, doing household chores, exercising, walking, and riding her bicycle indoors and outdoors.  (Tr. 212-37, 265, 279, 283, 290, 302, 313, 331, 355, 504).  For instance, medical notes from Michael Geisser, Ph.D., show that plaintiff reported performing the majority of the housecleaning, laundry, and cooking, and doing some yard work.  (Tr. 212-13, 225-26).  She also reported stretching, strength training, and doing aerobic exercises.  (Tr. 212-37).  The Commissioner contends that the ALJ properly considered plaintiff's extensive range of daily activities when evaluating her credibility and formulating her residual functional capacity assessment. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling

pain.").

The Commissioner also asserts that the ALJ properly considered Dr. Kleaveland's opinion and reasonably gave it only some weight. (Tr. 19). Medical opinions from treating sources, such as Dr. Kleaveland's opinion, may be given significant, or even controlling, weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Dr. Kleaveland opined, *inter alia*, that plaintiff could stand/walk for two hours in an eight hour day for 15-20 minutes at one time; could sit for four hours in an eight-hour workday for 15-20 minutes at one time; required 20-30 minute rest periods every 15-20 minutes; could lift up to 10 pounds; and would likely be absent from work more than 4 days per month. (Tr. 501-03). Contrary to plaintiff's argument, the Commissioner asserts that the ALJ reasonably gave Dr. Kleaveland's unduly restrictive opinion only some weight. (Tr. 19). Although plaintiff believes that the ALJ should have provided additional discussion regarding her findings, the Commissioner argues that the ALJ fully satisfied the requirement that she provide good reasons for the weight she assigned to the opinion.

The Commissioner also argues that substantial evidence supports the ALJ's

finding that Dr. Kleaveland's opinion was entitled to some weight, because it was based on plaintiff's subjective complaints, which were unsupported by the objective medical findings and inconsistent with the evidence of record.  (Tr. 19). Therefore, the functional limitations assessed by Dr. Kleaveland were unsupported by the objective medical findings and inconsistent with the other probative evidence of record.  20 C.F.R. § 404.1527(d)(2).  For example, plaintiff complained to Dr. Kleaveland that she could lift 10 pounds, sit for 15 minutes at a time before she had to get up and move around, stand for only 15 minutes at a time, and could not perform overhead activities.  (Tr. 275, 363, 549).  Plaintiff's unsupportive subjective complaints were adopted in Dr. Kleaveland's Medical Assessment of Ability to do Work Related Activities (Physical).  (Tr. 501-03). Significantly, Dr. Kleaveland reported that there were no objective findings.  (Tr. 501) and indicated that her assessment was based on plaintiff's subjective complaints by writing "symptoms based."  (Tr. 502).  Accordingly, because the ALJ properly found that plaintiff's subjective complaints were not entirely credible, she reasonably gave only some weight to Dr. Kleaveland's opinion which repeated those same unsupported subjective complaints.  And, the Commissioner points out that plaintiff and Dr. Kleaveland appear to have a very close relationship.  Plaintiff has treated with Dr. Kleaveland for years, plaintiff sent Dr. Kleaveland many emails, and plaintiff lived 8 houses away from Dr. Kleaveland.

(Tr. 414, 487, 533). As the ALJ highlighted, there was little-to-no objective medical evidence to support Dr. Kleaveland's opinion and plaintiff's subjective complaints. (Tr. 19). 20 C.F.R. § 404.1529 (providing that objective medical evidence is a useful indicator in making credibility determinations); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (recognizing that a court must be mindful of the biases that a treating physician may bring to the disability evaluation in an effort to do a favor for her patient and too quickly find disability). In light of the above, the Commissioner maintains that the ALJ reasonably gave Dr. Kleaveland's opinion only some weight.

According to the Commissioner, the ALJ considered plaintiff's testimony regarding her alleged symptoms. (Tr. 17-19). However, the ALJ cannot find a claimant disabled based solely on subjective complaints. 20 C.F.R. §§ 404.1528, 404.1529. The ALJ is not required to credit a claimant's subjective complaints, especially if those complaints are not supported by the objective medical evidence. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1995) (holding that plaintiff failed to provide objective evidence of her alleged disabling pain and thus affirming the ALJ's decision finding non-disability). Plus, the ALJ is required to include only plaintiff's credible limitations in his hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). In this case, according to the Commissioner, the medical evidence of

record, and the record as a whole, did not support plaintiff's complaints of pain

and fatigue that would preclude her from all work.  As discussed above, the

probative evidence of record supports the ALJ's determination that plaintiff's

subjective complaints were not entirely credible.  (Tr. 17).  According to the

Commissioner, there were no objective findings supporting plaintiff's complaints

of disabling pain and fatigue.  (Tr. 212-599).  Rather, the medical notes reveal

over and over that plaintiff remained very active and performed an extensive range

of daily activities, including walking up to 6 miles, riding her bicycle indoors and

outdoors, performing strength training, doing yoga, and performing the majority of

the household chores.  (Tr. 212-599).  In short, the Commissioner maintains that

the probative evidence of record does not support plaintiff's subjective complaints

of disabling pain and fatigue.  Accordingly, the ALJ properly did not include these

unsupported symptoms in her hypothetical question to the vocational expert.  *See*

*Casey*, 987 F.2d at 1235 (concluding that an ALJ's hypothetical question need

only include those impairments supported by the record); *Varley v. Sec'y of Health*

*& Human Servs.*, 820 F.2d 777 (6th Cir. 1987) (providing that an ALJ may rely on

a vocational expert's testimony in response to a hypothetical question if the

question accurately portrays a claimant's individual physical and mental

impairments) (citations omitted).  Thus, the Commissioner urges the Court to

conclude that, given that the vocational expert testified that plaintiff could perform

her past relevant work as a graphic designer, despite her credible limitations, the ALJ reasonably concluded that plaintiff was not disabled within the meaning of the Act.

The Commissioner also points out that the vocational expert testified that plaintiff could perform her past relevant work as a graphic designer, which did not require the performance of work-related activities precluded by her residual functional capacity. (Tr. 19, 45). Therefore, the sequential evaluation in this case ended at step four, and the ALJ did not have to proceed to step five and establish whether plaintiff could perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4).

According to the Commissioner, plaintiff erroneously argues that the ALJ failed to address Dr. Kleaveland's opinion. As discussed previously, the ALJ considered Dr. Kleaveland's opinion and properly determined that it was based on plaintiff's unsupported subjective complaints, therefore, meriting only some weight. (Tr. 19). To the extent plaintiff argues that the ALJ is required to give credence to Dr. Kleaveland's opinion that plaintiff could not complete a normal workweek, plaintiff is incorrect. The regulations make clear that whether a claimant is disabled is an issue reserved to the Commissioner and the source of an opinion on that issue is not given any special significance. 20 C.F.R. §§ 404.1527(d)(1), (3). Thus, the Commissioner need not accept any opinion that

a claimant is disabled or unable to work (i.e., perform full-time work).

D.    Plaintiff's Reply

Plaintiff disputes the ALJ's finding that plaintiff suffers from "probable postural orthostatic tachycardia (POTS) and possible fibromyalgia." (Tr. 16). According to plaintiff, the treating doctors' conclusions, after months of rigorous treatment, have not used the words "probable" or "possible" in their conclusions of plaintiff's condition. These words were used at the beginning of plaintiff's extensive treatment by renowned and prestigious doctors at the University of Michigan. Thus, to state that her diagnosis of POTS syndrome is "probable" is a mischaracterization of the record by the ALJ. On September 7, 2010, plaintiff was given a firm diagnosis of POTS syndrome and chronic fatigue syndrome and fibromyalgia by Dr. Kleaveland. (Tr. 494). On December 6, 2010, she confirmed this diagnosis. (Tr. 549). Dr. Kleaveland completed a medical questionnaire form on January 7, 2011, which assesses her opinions and conclusions on plaintiff's medical condition. There is no doubt, according to plaintiff, that the doctor concludes that plaintiff's diagnosis is severe postural tachycardia (POTS) and severe chronic fatigue with fibromyalgia. (Tr. 498). The use of "probable" or "possible" are nowhere to be found in the final diagnosis.

Besides, even if there was a "probable" or "possible" diagnosis at the beginning of plaintiff's treatment, it does not detract from the fact that plaintiff has

fatigue and pain issues. (Tr. 551 & 553). Indeed, plaintiff has tried almost every modality of pain treatment. For example, plaintiff, desperate to try anything in an attempt to improve her symptoms, went to see Dr. Zager to try alternative and complementary treatment. (Tr. 555). She also went to Dr. Master Hunter for acupuncture. (Tr. 564, 565, 571, 573, 574, 575, 576). Despite these treatments, Dr. Kleaveland states that plaintiff has continuing daytime fatigue with associated chronic pain and paresthesias. (Tr. 577, 583).

At the crux of defendant's argument that the treating doctor's opinion can be properly dismissed, is the claim that the treating doctor's opinion "was unsupported by the objective medical findings and inconsistent with the evidence of record." According to plaintiff, however, objective evidence does exist. Plaintiff's medical transcript includes hundreds of pages of detailed office notes which note clinical findings of plaintiff's symptoms. In regard to plaintiff's POTS diagnosis, she was seen in the emergency room at the University of Michigan Hospital for chest pains. (Tr. 241, 244). Her EKG showed "dynamic ST segment changes," so a treadmill stress echocardiogram was ordered. (Tr. 242). However, the test could not be performed due to plaintiff's severe postural tachycardia. (Tr. 264). More specifically, the treadmill portion was excluded due to elevated heart rates and blood pressure. *Id.* Additionally, plaintiff underwent Holter monitoring that revealed sinus rhythm but the testing indicated that plaintiff had some

Report and Recommendation
Cross-Motions for Summary Judgment
*Ferguson v. Comm'r*; Case No. 12-15080

premature atrial complexes (PACs) and she complained of chest pains throughout the testing. (Tr. 262). Indeed, it was highly suggested that the testing be repeated due to the PACs. *Id*. Based on these objective findings, plaintiff says she was given the diagnosis of POTS.

As far as plaintiff's diagnosis of fibromyalgia, as stated in *Preston v. Sec'y of Health & Human Servs*., 854 F.2d 815, 817-18 (6th Cir. 1988), "it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim." The Sixth Circuit and the Social Security Administration have also recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia. *See e.g.*, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston*, 854 F.2d at 820 (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity).

Plaintiff asserts that the Commissioner's suggestion that Dr. Kleaveland, who has examined plaintiff on multiple occasions over the course of several years, is "biased" because she lives in the same neighborhood as plaintiff and has

corresponded with plaintiff via email, is an insulting assumption to make about a renowned professor at the University of Michigan.

Moreover, plaintiff points out that where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must consider the following nonexhaustive list of factors to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the relevant evidence presented by a treating physician to support his opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  20 C.F.R. § 404.1527.  In addition, the treating-source rule contains a procedural, explanatory requirement that an ALJ give "good reasons" for the weight given a treating-source opinion.  *See e.g. Wilson*, 378 F.3d at 544; *Rogers*, 486 F.3d at 243 ("[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence.").  Plaintiff maintains that such is the case here.

Defendant also argues that Dr. Kleaveland's opinion was based on "unsupportive subjective complaints."  According to plaintiff, Dr. Kleaveland's report at Tr. 501-503 details objective and clinical findings including tenderness to palpation across the chest wall, shoulders, neck and upper back.  (Tr. 501).

Plaintiff concludes that the ALJ failed to provide good reasons for dismissing the treating physician's opinion and, therefore, she violated the treating source rule. *See Wilson*, 378 F.3d at 544-45.  Further, although an ALJ has broad discretion in weighing evidence, she must address facts that plainly undermine her decision. *See Howard v. Comm. of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).  The ALJ erred by ignoring obviously adverse evidence.  And further still, a treating physician's opinion given less than controlling weight is, unless thoroughly rebutted, entitled to "great deference." *Rogers v. Comm. of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  According to plaintiff, the ALJ not only failed to defer to the treating physician's opinion; she rejected it haphazardly given that no one denies that plaintiff suffers from fibromyalgia.  This condition tends to cause insomnia, fatigue, stiffness, and, above all, tenderness and pain all over the body. These subjective symptoms elude modern testing.  It follows that the testimony of a claimant with fibromyalgia must receive close attention: "Given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important .... [T]he nature of fibromyalgia itself renders ... a brief analysis [of a claimant's credibility] and over-emphasis upon objective findings inappropriate." *Rogers*, 486 F.3d at 248; SSR 96-7p. According to plaintiff, the ALJ dismissed plaintiff's fibromyalgia by stating there

is a lack of objective evidence.  Rather than question the fact of plaintiff's fibromyalgia, she needed to analyze in detail plaintiff's own claims.

Plaintiff also contends that the ALJ's analysis of plaintiff's credibility is not supported by substantial evidence in the record because not only is the analysis cherry picked but it altogether ignores significant diagnosis and findings.  The ALJ inaccurately summarized the evidence and did not articulate her reasoning enough to satisfy the requirements of the regulations, case law, and SSR 96-7p. By regulation, the ALJ is required to consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources, as was done here.  20 C.F.R. §§ 404.1512(b), 404.1513.  Instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, plaintiff contends that the ALJ cherry-picked select portions of the medical record or wrongly claimed plaintiff alleged certain severe impairments, to discredit her.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial
determination that can be appealed first to the agency itself, then to an ALJ, and
finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is
not found during this administrative review process, the claimant may file an
action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final
administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this
statute is limited in that the court "must affirm the Commissioner's conclusions
absent a determination that the Commissioner has failed to apply the correct legal
standard or has made findings of fact unsupported by substantial evidence in the
record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);
*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding
whether substantial evidence supports the ALJ's decision, "we do not try the case
de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.
McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,
387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to
evaluate the credibility of witnesses, including that of the claimant." *Rogers v.
Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.
Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a
claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

   The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe

impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Treating physician evidence/diagnosis

While plaintiff contends that the ALJ erred by stating that her diagnoses were "probable," in the view of the undersigned, this is part and parcel of the ALJ's treatment of the treating physician opinion evidence. As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good

reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing 20 C.F.R. § 404.1527(d)(2).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v.*

*Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants

are entitled to receive good reasons for the weight accorded their treating sources

independent of their substantive right to receive disability benefits."  *Smith v.*

*Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The opinion of a non-

examining physician, on the other hand, 'is entitled to little weight if it is contrary

to the opinion of the claimant's treating physician.'"  *Adams v. Massanari*, 55

Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have remanded the Commissioner's

decisions when they have failed to articulate "good reasons" for not crediting the

opinion of a treating source, as § 1527(d)(2) requires.  *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing *Halloran v. Barnhart*, 362 F.3d 28,

33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not

provided 'good reasons' for the weight given to a treating physician's opinion and

we will continue remanding when we encounter opinions from ALJ's that do not

comprehensively set forth the reasons for the weight assigned to a treating

physician's opinion.").

  In this case, the ALJ articulated the following reasons for giving Dr.

Kleaveland's opinion "some weight":

> One of the claimant's treating physicians, Mary
> Kleaveland, M.D., issued a medical source statement in
> January 2011.  She stated that she has been treating the
> claimant since 2002, but her pain issues did not begin
> until January 2009. She indicated that the claimant's

symptoms included chronic pain, numbness and
weakness. Dr. Kleaveland opined that the claimant could
stand/walk for two hours in an eight hour day, but could
only do so for 15 to 20 minutes at one time; the claimant
could sit for four hours in a work day, but could only do
so for 15 to 20 minutes at one time; she requires 20 to 30
minute rest periods every 15 to 20 minutes; she could lift
up to ten pounds; and she would likely be absent from
work more than four days per month. (Exhibits l lF, pp
1-3; 12F, pp 2-4). This opinion is given some weight. On
the one hand, Dr. Kleaveland is the claimant's treating
physician who has treated her for years and therefore is
well positioned to opine regarding her condition. On the
other hand, the restrictions that Dr. Kleaveland posits are
based on the claimant's subjective complaints. Dr.
Kleaveland states as much in her medical source
statement. As noted above, however, the claimant's
assertions regarding the degree of the limiting effect of
her impairments are not supported by objective medical
evidence.

(Dkt. 8-2, Pg ID 46). The ALJ gave little weight to Dr. Kleaveland's opinion for

two reasons: (1) her opinions were based solely on plaintiff's "subjective

complaints"; and (2) plaintiff's limitations were not as severe as she claimed

primarily because of her level of daily activity/exercise.

A major complicating factor in this case is plaintiff's primary diagnosis of

POTS. The ALJ really failed to understand this syndrome and how difficult it is to

diagnose and treat. Postural Orthostatic Tachycardia Syndrome (POTS) is a form

of dysautonomia. POTS is a subset of orthostatic intolerance that is associated

with the presence of excessive tachycardia on standing. *See Dysautonomia*

*International*, http://www.dysautonomiainternational.org/page.php?ID=30.  While the diagnostic criteria focus on the abnormal heart rate increase on standing, POTS usually presents with symptoms much more complex than a simple increase in heart rate.  It is fairly common for POTS patients to have a noticeable drop in blood pressure on standing, but some POTS patients have no change or even an increase in blood pressure upon standing.  POTS patients often have hypovolemia (low blood volume) and high levels of plasma norepinephrine while standing, reflecting increased sympathetic nervous system activation.  Many POTS patients also experience fatigue, headaches, lightheadedness, heart palpitations, exercise intolerance, nausea, diminished concentration, tremulousness (shaking), syncope (fainting), coldness or pain in the extremities, chest pain and shortness of breath. *Id*.  Treatment may include: increasing fluid intake to 2-3 liters per day; increasing salt consumption to 3,000 mg to 10,000 mg per day (except in Hyperandrenergic POTS); wearing compression stockings; raising the head of the bed (to conserve blood volume); reclined exercises such as rowing, recumbent bicycling and swimming; a healthy diet; avoiding substances and situations that worsen orthostatic symptoms; and finally, the addition of medications meant to improve symptoms.  Many different medications are used to treat POTS, such as Fludrocortisone, Beta Blockers, Midodrine, Clonidine, Pyridostigmine, Benzodiazepines, SSRIs, SNRIs, Erythropoietin and Octreotide.  If an underlying

cause of the POTS symptoms can be identified, treating the underlying cause is

very important as well. *Id*. In *Goodrich v. Comm'r of Soc. Sec.*, 2012 WL 750291

(M.D. Fla. 2012), the Court observed:

> The severity of the symptoms in people with
> dysautonomia are typically far out of proportion to any
> objective physical or laboratory findings (especially
> when the doctors don't know which findings to look
> for).... Patients lucky enough to be taken seriously by
> their family doctors are likely to be referred to a
> specialist. The type of specialist they are sent to usually
> depends on the predominant symptom they are
> experiencing, or on the symptom that most impresses the
> family doctor. And the diagnosis they are ultimately
> given depends on their predominant symptoms and
> which specialist they end up seeing. Thus: Those whose
> main complaint is easy fatigability are likely to be
> diagnosed with [chronic fatigue syndrome]. Those who
> pass out are labeled as vasovagal or neurocardiogenic
> syncope.... If dizziness on standing up is the chief
> problem, POTS is the diagnosis. Diarrhea or abdominal
> pain buys you irritable bowel syndrome. Pain elsewhere
> ends up being fibromyalgia.

*Id*.[3]

In this case, there is no question that Dr. Kleaveland, after extensive testing

and treatment with a variety of specialists to rule out other diagnoses, over an

extended period of time, ultimately diagnosed plaintiff with POTS. There is also

no evidence in the record that plaintiff was malingering or that any of the many

---

[3] Quoting, Richard N. Fogoros, M.D.,
http://heartdisease.about.com/cs/womensissues/a/dysautonomia.htm

treating physicians and specialists believed that she was making up or exaggerating her symptoms. Simply because POTS is difficult to diagnose, and it is not easily identifiable with objective test results, does not make the symptoms and limitations it may cause somehow less real. Here, based on extensive treatment over a lengthy period of time since plaintiff's symptoms began in early 2009, testing, clinical analysis, and input from specialists, Dr. Kleaveland came to an informed opinion regarding plaintiff's functional limitations.

In many respects, POTS appears to be much like fibromyalgia, which she may also suffer from.[4] Both diagnoses are made after many other diagnoses have been ruled out and are based on mostly subjective and self-reported symptoms. In fibromyalgia cases, if an ALJ rejects a plaintiff's claimed limitations based on a lack of foundation in "objective medical evidence," such a decision will generally be reversed. The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Canfield v.*

---

[4] It is not entirely clear whether the ALJ's conclusion that plaintiff had "possible fibromyalgia" had on the overall analysis of the ALJ, since that was found to be a severe impairment. Since this matter is being remanded for other reasons, the undersigned suggests that the ALJ consider plaintiff's "possible fibromyalgia" diagnosis under the standards set forth in *Rogers* in conjunction with the re-evaluation of her POTS, given that they could be related diagnoses. Notably, plaintiff was also diagnosed with chronic fatigue syndrome. (Dkt. 8-8, Pg ID 578).

*Comm'r of Soc. Sec.*, 2002 WL 31235758, *1 (E.D. Mich. 2002) (discussing how it is "nonsensical to discount a fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking."). Similarly, the ALJ, failing to consider the unique nature of POTS, relied entirely too much on the lack of "objective medical evidence" rather than focusing on plaintiff's extensive treatment history and the clinical findings of her long-term treating physician. Under these circumstances, the undersigned concludes that the ALJ did not give sufficiently good reasons for declining to give this opinion controlling weight.

Moreover, if the ALJ determined that Dr. Kleaveland's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Kleaveland's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion

> is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical
> opinions are still entitled to deference and must be
> weighed using all of the factors provided in 20 CFR
> 404.1527 and 416.927. In many cases, a treating source's
> medical opinion will be entitled to the greatest weight
> and should be adopted, even if it does not meet the test
> for controlling weight.

The ALJ failed to fully explain why Dr. Kleaveland's opinion should not be given

controlling weight or even deference, as required by the regulations. 20 C.F.R.

§ 404.1527(d)(2).

> 2.      Credibility/pain symptoms

The Commissioner contends that the ALJ properly considered a number of

factors in evaluating plaintiff's credibility, including her daily activities, exercise

regimen, the objective medical evidence of record, and the state agency medical

opinion.[5]  However, part and parcel of the problem with the ALJ's credibility

assessment is the same as with the assessment of plaintiff's treating physician's

opinions; it seems to be based on a fundamental misunderstanding of plaintiff's

disorder and the treatments prescribed for that disorder.  Thus, the ALJ's

credibility analysis will necessarily have to be reexamined based solely on the

need for reconsideration of the treating physician opinions.

---

[5]  Notably, however, the state agency physician rendered an opinion in May, 2010.  (Dkt. 8-7, Pg ID 421-428).  Thus, this physician did not have the benefit of over one year of subsequent treatment, where plaintiff's physical limitations seems to have become more severe. *See* note 6.

In addition, as noted above and throughout plaintiff's extensive medical record, exercise is one of the primary treatments for this disorder.  Yet, plaintiff was essentially penalized by the ALJ for diligently following the exercise regimen prescribed by her treating physician, who encouraged her to keeping pushing herself.  (*See e.g.* Dkt. 8-7, Pg ID 383); *see also Johnson v. Comm'r of Soc. Sec.*, 2013 WL 5613535, at *8 (6th Cir. 2013) ("A claimant should not be penalized for following through with treatment related to a claimed disability.").  Notably, plaintiff often reported that she would have to take frequent breaks during all of her activities, including her exercise regimen.  (Dkt. 8-3, Pg ID 88).  Her physical rehabilitation doctor also encouraged her to keep increasing her exercise, keeping pacing principles in mind to manage her pain, and take frequent postural breaks during different activities to help manage her pain.  (Dkt. 8-7, Pg ID 249); (*see also* Dkt. 8-8, Pg ID 586) (2/7/11: "She has fatigue and has to rest frequently throughout the day.").  In addition, plaintiff's ability to walk seems to have progressively become more limited from 2009 through 2011.[6]  (*See e.g.*, Dkt. 8-8, Pg ID 580) (10/20/10: "She continues to try and walk or do some type of exercise

---

[6]   In her Adult Function Report dated February 23, 2010, plaintiff reported being able to walk one mile before needed a rest and being able to walk up to 3 miles per day.  (Dkt. 8-6, Pg ID 205).  In August 2009, she was able to walk six miles and bike for 15 miles.  (Dkt. 8-7, Pg ID 298).  Back in September 2009, she reported being able to ride her bike 15 miles per day with only one rest, where she needed to lie down.  (Dkt. 8-7, Pg ID 297). By January 2010, she was only walking 3 miles per day and riding a bike for 30 minutes every other day.  (Dkt. 807, Pg ID 345).  By July 2011, she was only walking 1.5 miles per day.  (Dkt. 8-8, Pg ID 599).

daily, but has to limit herself."); (Dkt. 8-8, Pg ID 578) (9/7/10: "She is trying to

walk for 40 to 50 minutes a day."); (Dkt. 8-8, Pg ID 588) (2/23/11: "With regard

to physical activity, the patient reports that she attempts to engage in her PT and

OT home exercises each day along with walking outside or on the treadmill. She

does try to limit her amount of physical activity as she reports that if she does

'overdo it,' her symptoms will be worse in subsequent days."); (Dkt. 8-8, Pg ID

595) (9/7/11: "She feels weak and has trouble with pushing herself to walk

because of leg weakness and fatigue."); (Dkt. 8-8, Pg ID 599) (7/5/11: "She is able

to walk about a mile and a half a day, but not at one time."); (Dkt. 8-8, Pg ID 608)

(5/4/11: "She states it is hard to stand, to sit, and to walk for any periods of time.

Usually, she is able to do these things for about 15 minutes at a time. She pushes

herself to walk a mile, then takes a break and then will try walking again. When

she pushes herself too hard, she will have increasing pain and increasing

numbness and increasing arm weakness.").

And, while the ALJ found that plaintiff could perform her past relevant

work as a graphic designer, the biggest problems for plaintiff, as she consistently

reported, is sitting and using the computer and standing.  While graphic designer

is a sedentary occupation, the ALJ failed to address these very specific limitations

which are fundamental to performing any sedentary job, including graphic

designer.  The ALJ's use of plaintiff's level of therapeutic, physician-

recommended exercise to conclude that she can do a sedentary job, when sitting

and standing are what exacerbate her symptoms, is rather like comparing apples

and oranges.  (Dkt. 8-7, Pg ID 244) (11/18/09: Prolonged sitting, standing, and

reaching exacerbate her pain, while lying flat and periodically moving, help

alleviate it); (Dkt. 8-7, Pg ID 320) (6/18/09: Slight progress as to sitting tolerance

noted); (Dkt. 8-7, Pg ID 322) (6/8/09: Has not been able to remain sitting upright

long enough to be able to work); (Dkt. 8-7, Pg ID 326) (5/18/09: Paresthesias

worsens with extended sitting or standing); (Dkt. 8-7, Pg ID 333) (3/30/09: Sitting

for longer than 20 minutes caused neck pressure and fullness); (Dkt. 8-7, Pg ID

341) (2/8/10: Symptoms worsen when sitting); (Dkt. 8-7, Pg ID 367) (10/9/09:

Can sit for up to 30 minutes); (Dkt. 8-7, Pg ID 370) (10/5/09: Numbness is worse

when sitting upright); (Dkt. 8-7, Pg ID 387) (5/10/09: Paresthesias worsens with

extended sitting or standing); (Dkt. 8-7, Pg ID) (8/10/09: Cannot sit for any

prolonged period of time because of increased chest pressure, cannot stand for

more than 15 minutes).  In this vein, the ALJ also failed to account for the

consistency of plaintiff's complaints.  Consistency is not determinative, but

consistency should be scrutinized when taking the entire case record into

consideration.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-248 (6th Cir.

2007) ("Consistency between a claimant's symptom complaints and the other

evidence in the record tends to support the credibility of the claimant, while

inconsistency, although not necessarily defeating, should have the opposite effect.").  The ALJ also did not consider plaintiff's use of a TENS unit two hours per day and her need to lie down on a regular basis, as supported by her treating physician opinion.  For all these reasons, plaintiff's credibility will have to reconsidered on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

December 2, 2013                    s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>December 2, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kerry J. Spencer, Ameenah Lewis, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security</u>.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Ferguson v. Comm'r*; Case No. 12-15080